J-A03042-20

2020 PA Super 105

| | | |
|---|---|---|
| SUSAN UNGURIAN, INDIVIDUALLY AND AS GUARDIAN OF JASON UNGURIAN, AN INCAPACITATED PERSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | No. 298 MDA 2019 |
| ANDREW BEYZMAN, M.D.; ROBERT BURRY, CRNA; NORTH AMERICAN PARTNERS IN ANESTHESIA (PENNSYLVANIA), LLC, INDIVIDUALLY AND D/B/A NAPA; NORTH AMERICAN PARTNERS IN ANESTHESIA, LLP, INDIVIDUALLY AND D/B/A NAPA; WILKES-BARRE HOSPITAL COMPANY, LLC, INDIVIDUALLY AND D/B/A WILKES-BARRE GENERAL HOSPITAL, WYOMING VALLEY HEALTH CARE SYSTEM, COMMONWEALTH HEALTH AND/OR COMMONWEALTH HEALTH SYSTEMS, INC.; COMMUNITY HEALTH SYSTEMS, INC., INDIVIDUALLY AND D/B/A WILKES-BARRE GENERAL HOSPITAL, WYOMING VALLEY HEALTH CARE SYSTEM, COMMONWEALTH HEALTH AND/OR COMMONWEALTH HEALTH SYSTEM | : | |
| | : | |
| APPEAL OF: WILKES-BARRE HOSPITAL COMPANY, LLC D/B/A WILKES BARRE GENERAL HOSPITAL | : | |

Appeal from the Order Entered February 1, 2019
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2018-08789

| | | |
|---|---|---|
| SUSAN UNGURIAN, INDIVIDUALLY AND AS GUARDIAN OF JASON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-A03042-20

UNGURIAN, AN INCAPACITATED                 :
PERSON                                     :
                                           :
                                           :
                                           :
                                           :
              v.                           :
                                           :
                                           :
                                           :   No. 300 MDA 2019
ANDREW BEYZMAN, M.D.; ROBERT               :
BURRY, CRNA; NORTH AMERICAN                :
PARTNERS IN ANESTHESIA                     :
(PENNSYLVANIA), LLC,                       :
INDIVIDUALLY AND D/B/A NAPA;               :
NORTH AMERICAN PARTNERS IN                 :
ANESTHESIA, LLP, INDIVIDUALLY              :
AND D/B/A NAPA; WILKES-BARRE               :
HOSPITAL COMPANY, LLC,                     :
INDIVIDUALLY AND D/B/A WILKES-             :
BARRE GENERAL HOSPITAL,                    :
WYOMING VALLEY HEALTH CARE                 :
SYSTEM, COMMONWEALTH HEALTH                :
AND/OR COMMONWEALTH HEALTH                 :
SYSTEMS, INC.; COMMUNITY                   :
HEALTH SYSTEMS, INC.,                      :
INDIVIDUALLY AND D/B/A WILKES-             :
BARRE GENERAL HOSPITAL,                    :
WYOMING VALLEY HEALTH CARE                 :
SYSTEM, COMMONWEALTH HEALTH                :
AND/OR COMMONWEALTH HEALTH                 :
SYSTEM                                     :
                                           :
                                           :
                                           :
APPEAL OF: WILKES-BARRE                     :
HOSPITAL COMPANY, LLC,                     :
INDIVIDUALLY AND D/B/A WILKES-             :
BARRE GENERAL HOSPITAL                     :

Appeal from the Order Entered February 6, 2019
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2018-08789

SUSAN UNGURIAN, INDIVIDUALLY        :     IN THE SUPERIOR COURT OF
AND AS GUARDIAN OF JASON            :           PENNSYLVANIA
UNGURIAN, AN INCAPACITATED          :
PERSON                              :
                                    :

- 2 -

|  |  |  |  |
|---|---|---|---|
|  | : |  |  |
| v. | : |  |  |
|  | : |  |  |
|  | : | No. 722 MDA 2019 |  |
| ANDREW BEYZMAN, M.D.; ROBERT | : |  |  |
| BURRY, CRNA; NORTH AMERICAN | : |  |  |
| PARTNERS IN ANESTESIA | : |  |  |
| (PENNSYLVANIA) LLC, INDIVIDUALLY | : |  |  |
| AND D/B/A NAPA; NORTH AMERICAN | : |  |  |
| PARTNERS IN ANESTHESIA LLP, | : |  |  |
| INDIVIDUALLY AND D/B/A NAPA; | : |  |  |
| WILKES-BARRE GENERAL HOSPITAL, | : |  |  |
| WYOMING VALLEY HEATHCARE | : |  |  |
| SYSTEM, COMMONWEALTH HEALTH | : |  |  |
| AND/OR COMMONWEALTH HEALTH | : |  |  |
| SYSTEM, INC. INDIVIDUALLY AND | : |  |  |
| D/B/A WILKES-BARRE GENERAL | : |  |  |
| HOSPITAL, WYOMING VALLEY | : |  |  |
| HEALTHCARE SYSTEM, | : |  |  |
| COMMONWEALTH HEALTH AND/OR | : |  |  |
| COMMONWEALTH HEALTH SYSTEMS | : |  |  |
|  | : |  |  |
|  | : |  |  |
|  | : |  |  |
| APPEAL OF: WILKES-BARRE | : |  |  |
| HOSPITAL COMPANY, LLC D/B/A | : |  |  |
| WILKES-BARRE GENERAL HOSPITAL | : |  |  |

Appeal from the Order Entered April 24, 2019
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
08789-2018

|  |  |  |
|---|---|---|
| SUSAN UNGURIAN, INDIVIDUALLY | : | IN THE SUPERIOR COURT OF |
| AND AS GUARDIAN OF JASON | : | PENNSYLVANIA |
| UNGURIAN, AN INCAPACITATED | : |  |
| PERSON | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |
|  | : | No. 949 MDA 2019 |
| ANDREW BEYZMAN, M.D.; ROBERT | : |  |
| BURRY, CRNA; NORTH AMERICAN | : |  |
| PARTNERS IN ANESTHESIA | : |  |
| (PENNSYLVANIA), LLC, | : |  |
| INDIVIDUALLY AND D/B/A NAPA; | : |  |

- 3 -

NORTH AMERICAN PARTNERS IN       :
ANESTHESIA, LLP, INDIVIDUALLY    :
AND D/B/A NAPA; WILKES-BARRE     :
HOSPITAL COMPANY, LLC,           :
INDIVIDUALLY AND D/B/A WILKES-   :
BARRE GENERAL HOSPITAL,          :
WYOMING VALLEY HEALTH CARE       :
SYSTEM, COMMONWEALTH HEALTH      :
AND/OR COMMONWEALTH HEALTH       :
SYSTEMS, INC.;COMMUNITY HEALTH   :
SYSTEMS, INC., INDIVIDUALLY AND  :
D/B/A WILKES-BARRE GENERAL       :
HOSPITAL, WYOMING VALLEY         :
HEALTH CARE SYSTEM,              :
COMMONWEALTH HEALTH AND/OR       :
COMMONWEALTH HEALTH SYSTEM       :
                                 :
                                 :
                                 :
APPEAL OF: WILKES-BARRE          :
HOSPITAL COMPANY, LLC D/B/A      :
WILKES-BARRE GENERAL HOSPITAL    :

Appeal from the Order Entered June 6, 2019
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
08789-2018

SUSAN UNGURIAN, INDIVIDUALLY     :   IN THE SUPERIOR COURT OF
AND AS GUARDIAN OF JASON         :         PENNSYLVANIA
UNGURIAN, AN INCAPACITATED       :
PERSON                           :
                                 :
                                 :
                                 :
          v.                     :
                                 :
                                 :   No. 950 MDA 2019
ANDREW BEYZMAN, M.D.; ROBERT     :
BURRY, CRNA; NORTH AMERICAN      :
PARTNERS IN ANESTESIA            :
(PENNSYLVANIA) LLC, INDIVIDUALLY :
AND D/B/A NAPA; NORTH AMERICAN   :
PARTNERS IN ANESTHESIA LLP,      :
INDIVIDUALLY AND D/B/A NAPA;     :
WILKES-BARRE GENERAL HOSPITAL,   :
WYOMING VALLEY HEATHCARE         :
SYSTEM, COMMONWEALTH HEALTH      :

- 4 -

AND/OR COMMONWEALTH HEALTH :
SYSTEM, INC. INDIVIDUALLY AND :
D/B/A WILKES-BARRE GENERAL :
HOSPITAL, WYOMING VALLEY :
HEALTHCARE SYSTEM, :
COMMONWEALTH HEALTH AND/OR :
COMMONWEALTH HEALTH SYSTEMS :
 :
 :
APPEAL OF: WILKES-BARRE :
HOSPITAL COMPANY, LLC D/B/A :
WILKES-BARRE GENERAL HOSPITAL :

Appeal from the Order Entered June 6, 2019
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
08789-2018

BEFORE: LAZARUS, J., STABILE, J., and DUBOW, J.

OPINION BY DUBOW, J.:       **FILED APRIL 28, 2020**

Appellant, Wilkes-Barre Hospital Company, LLC d/b/a Wilkes-Barre General Hospital ("Hospital"), appeals from five Orders entered in the trial court compelling production of documents that Hospital alleges are privileged by the Patient Safety Quality Improvement Act ("PSQIA"), 42 U.S.C. § 299b-22(a), and the Peer Review Protection Act ("PRPA"), 63 P.S. § 425.4.  After careful review, we affirm.

Briefly, this matter arises in the context of a medical malpractice action brought by plaintiff, Susan Ungurian, against multiple corporate and individual defendants.  Mrs. Ungurian alleges that, on March 5, 2018, the negligence of defendants caused the total and permanent incapacity of her son, Jason

- 5 -

Ungurian, who was undergoing a cystoscopy[1] at Hospital. In the course of discovery, on August 7, 2018, August 17, 2018, and September 13, 2018, Mrs. Ungurian propounded requests for production of documents and interrogatories on all defendants, including Hospital.

On October 8, 2018, and October 10, 2018, Hospital served Mrs. Ungurian with responses and objections to her First and Second Requests for Production of Documents, and responded and objected to her First Set of Interrogatories. Hospital asserted that these documents were privileged pursuant to, *inter alia*, the PRPA and the PSQIA, and served Mrs. Ungurian with a privilege log, listing five documents Hospital was withholding. Relevantly, Hospital's privilege log identified the following documents as privileged:

1. Event Report completed on March 5, 2018[,] by Robert Burry, CRNA [("Burry Event Report")] for event date of March 5, 2018[,] relating to "Surgery, Treatment, Test, Invasive Procedure" reviewed by Jacqueline Curley, R.N., Clinical Leader, on March 21, 2018[,] and Elizabeth Trzcinski, R.N., Risk Coordinator, on March 8, 2018;

2. The SSER (Serious Safety Event Rating) Meeting Summary dated April 12, 2018[,] prepared by Elizabeth Trzcinski, R.N., Risk Coordinator;

3. Meeting Minutes from the Patient Safety Committee held on May 15, 2018[,] prepared by Joan DeRocco, R.N., Director Patient Safety Services, and Elizabeth Trzcinski, R.N., Risk Coordinator;

4. Root Cause Analysis Report dated April 12, 2018; and

---

[1] A cystoscopy is an endoscopy of the bladder via the urethra. Jason Ungurian underwent a cystoscopy to remove kidney stones.

5. [Hospital's] Quality Improvement Staff Peer Review completed by Dale A. Anderson, M.D. on April 15, 2018.

Privilege Log, 10/8/18, at 2-3.

On December 3, 2018, Mrs. Ungurian filed a Motion to Strike Objections and Compel Responses to her First and Second Requests for the Production of Documents and First Set of Interrogatories Propounded upon Hospital. In her Motion, Mrs. Ungurian argued that Hospital had failed to establish that PSQIA and PRPA privileges applied to the documents in Hospital's privilege log.

Hospital filed a Response to the Motion, claiming that two documents—the Burry Event Report and the Root Cause Analysis—were patient safety work product privileged by the PSQIA. Hospital also asserted that the PRPA Privilege protected it from producing the Burry Event Report and the Root Cause Analysis along with other documents, including the Quality Improvement Peer Review Meeting minutes, the Serious Safety Event Rating Meeting, minutes from the Patient Safety Committee, and certain credentialing files. Hospital supported its privilege claims with an affidavit from Joan DeRocco-DeLessio, Director of Patient Safety Services ("Affidavit").[2] In addition to baldly asserting that each of the requested documents were "specifically designated as privileged peer review information[,]" the Affidavit describes the relevant documents as follows.

**<u>The Burry Event Report</u>**

---

[2] The Affidavit is the only evidence Hospital provided to the court in support of its assertions of privilege.

Hospital described the Burry Event Report as a two-page document "completed on March 5, 2018," which was the day of the incident that gave rise to this action. Privilege Log, 10/8/18, at 2. CRNA Robert Burry completed the Report in compliance with Hospital's "Event Reporting Policy."[3] Affidavit, 12/18/18, at ¶ 10.

### The Root Cause Analysis Report

Hospital's Root Cause Analysis Committee produced the Root Cause Analysis Report on April 12, 2018, ostensibly "during the course of a peer review concerning [Jason] Ungurian's medical care on March 5, 2018." Affidavit at ¶ 26. Hospital purports that it prepared the Root Cause Analysis Report to evaluate Jason Ungurian's care and to improve patient safety and quality of care. *Id.* at ¶¶ 27-28. Hospital stated that it maintains the Root Cause Analysis Report within its ERS[4] for reporting to CHS PSO, LLC,[5] and that it electronically submitted the Root Cause Analysis Report to CHS PSO, LLC. *Id.* at ¶¶ 30-31.

### The Quality Improvement Peer Review

Hospital referred to the Quality Improvement Peer Review as the "initiating part of the peer review process." Affidavit at ¶ 21. Dr. Dale

---

[3] Hospital attached a copy of its "Event Reporting Policy" to the Affidavit.

[4] An "ERS" is an "event reporting system."

[5] A "PSO" is a "patient safety organization."

Anderson was the physician reviewer of the Quality Improvement Medical Staff Peer Review Form. *Id.* at ¶ 20. According to Hospital's Privilege Log, Dr. Anderson completed the Quality Improvement Peer Review on April 15, 2018, more than one month after the incident in question. Privilege Log at 3.

### The Serious Safety Event Meeting Summary

Hospital asserted that Elizabeth Trzcinski, R.N., Risk Coordinator, prepared the Serious Safety Event Meeting dated April 12, 2018, to summarize the meeting of Hospital's Serious Safety Event Committee. Privilege Log at 2; Affidavit at ¶ 23. In its Affidavit, Hospital does not provide the date the Committee met or who comprised the committee.

### The Patient Safety Committee Meeting Minutes

Hospital held the relevant Patient Safety Committee Meeting on May 15, 2018. Affidavit at ¶ 34. The Affidavit describes the Committee as "a multidisciplinary group whose membership is representative of both the hospital and community it serves." *Id.* at ¶ 36.

### The January 30, 2019 Order

The court held a hearing on Appellee's Motion after which, on January 30, 2019, it issued an Order ( "January 30, 2019 Order") directing Hospital to produce the Burry Event Report, the Root Cause Analysis, and the Quality

Improvement Peer Review. The court found that neither the PSQIA nor the PRPA privileges protected any of these documents.[6]

### The February 5, 2019 Order

On February 5, 2019, the court amended the January 30, 2019 Order directing Hospital to produce, within 15 days, Dr. Andrew Beyzman's and CRNA Robert Burry's complete credentialing files and the National Practitioner Data Bank Query Response[7] ( "February 5, 2019 Order").

On February 22, 2019, Mrs. Ungurian filed a Motion to Compel production of the Serious Safety Event Rating Meeting Summary and the Patient Safety Committee Meeting Minutes.

---

[6] The January 30, 2019 Order also directed Hospital to provide the court within fifteen days with information about Serious Safety Event Rating Meeting and the Patient Safety Committee Meeting Minutes to help it determine whether a privilege attached to these documents. This information included: (1) the author of the document; (2) the purpose of the document; (3) the attendees at the meeting; and (4) any other recipients of the document.

[7] The National Practitioner Data Bank is a "web-based repository of reports containing information on medical malpractice payments and certain adverse actions related to health care practitioners, providers, and suppliers." About US, National Practitioner Data Bank, https://www.npdb.hrsa.gov/topNavigation/aboutUs.jsp (last visited April 9, 2020). Congress established the data bank as a "tool that prevents practitioners from moving state to state without disclosure of discovery of previous damaging performance." *Id.*

**The April 24, 2019 Order**

On April 16, 2019, the court held a hearing on the Motion to Compel.[8] Following the hearing, on April 24, 2019, the court issued an Order ("April 24, 2019 Order") directing Hospital to produce the Serious Safety Event Rating Meeting Summary and the Patient Safety Committee Meeting Minutes .

On June 3, 2019, Mrs. Ungurian filed an Emergency Motion to Strike Objections and Compel Discovery Responses from Defendants Andrew Beyzman, M.D., Robert Burry, CRNA, North American Partners In Anesthesia (Pennsylvania), LLC, Individually and d/b/a NAPA ("NAPA PA"), and North American Partners In Anesthesia, LLP, Individually and d/b/a ("NAPA LLP") (collectively, the "NAPA Defendants"). Mrs. Ungurian also moved for sanctions against those defendants. Relevantly, she averred that through supplemental discovery responses from the NAPA Defendants, she learned that the NAPA Defendants also possessed the Quality Improvement Peer Review, which, despite Hospital's privilege assertion, the court had previously ordered Hospital to produce.

The court held a hearing on Mrs. Ungurian's Emergency Motion. Mrs. Ungurian argued at the hearing that the PRPA did not protect the Quality

---

[8] At this hearing, Hospital asserted that in its January 30, 2019 Order the court had ordered an *in camera* review of the Serious Safety Event Rating Meeting Summary and the Patient Safety Committee Meeting Minutes. The court rejected this contention, emphasizing that it ordered Hospital to provide it with information about those documents to assist it in determining whether the documents were privileged, **not** because it intended to review the documents *in camera*.

Improvement Peer Review because Dr. Anderson prepared it and he was not a licensed medical professional. Hospital and the NAPA Defendants argued that the privilege applied because Dr. Anderson had conducted the review at Hospital's request.

At the hearing, the parties also discussed the production of the credentialing files for Hospital employees involved in Jason Ungurian's care[9] and of correspondence between Joan Keis, Hospital's chief quality officer, and Dr. Thomas James, the senior medical director for Hospital's insurer, Highmark, about the substance of the Root Cause Analysis. Mrs. Ungurian argued that Hospital's asserted privileges over the Root Cause Analysis were inapplicable. Hospital countered with the policy argument that an insured should be freely able to discuss certain events with its insurer in an effort to maintain coverage. With respect to the credentialing files, Hospital claimed that it withheld production because it believed the files were either peer review protected or irrelevant.

**The June 6, 2019 Orders**

On June 6, 2019, the court ordered NAPA PA to produce a complete copy of the Quality Improvement Peer Review ("June 6, 2019 QIPR Order"). The court concluded that the PRPA privilege did not apply to the Quality Improvement Peer Review because: (1) Dr. Anderson was not licensed to

---

[9] These people included Katelyn Farrell, RN, JoAnn Thomas, RN, Kristen Yavorski, RN, Kayla Barber, ST, Kimberly Barron, ST, Lisa Cernera, RNFA, BSN, Calvin Dysinger, MD, Shay Robinson, MD, John Amico, CRNA, Jason McDade, RN, and Daniel Walton, RN.

practice medicine in Pennsylvania when he prepared the Quality Improvement Peer Review; (2) he was a managing partner of NAPA LLP, a non-healthcare provider; (3) the contract between Hospital and NAPA LLP did not provide for the provision of peer review services; and (4) NAPA LLP, an original source, also possessed the Quality Improvement Peer Review.

That same day the court entered a separate Order directing Hospital to produce the requested credentialing files, excluding limited personal information and any National Practitioner Data Bank Query Responses ("June 6, 2019 Credentialing Order").

Hospital filed appeals from each of these Orders, which this court consolidated.[10]  Both Hospital and the trial court have complied with Pa.R.A.P. 1925.

Hospital raises the following issues on appeal:

1.  Whether the [t]rial [c]ourt erred in holding that the [Burry] Event Report prepared by CRNA Burry and the Root Cause Analysis are not protected from discovery by virtue of the PSQIA?

---

[10] "[M]ost discovery orders are deemed interlocutory and not immediately appealable because they do not dispose of the litigation." *Veloric v. Doe*, 123 A.3d 781, 784 (Pa. Super. 2015) (quotation marks and citation omitted). Nevertheless, "[a]n appeal may be taken as of right from a collateral order of [a] . . . lower court." Pa.R.A.P. 313(a). "A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). "When a party is ordered to produce materials purportedly subject to a privilege, we have jurisdiction under Pa.R.A.P. 313 . . . ." *Yocabet v. UPMC Presbyterian*, 119 A.3d 1012, 1016 n.1 (Pa. Super. 2015) (citation omitted).

- 13 -

2.  Whether the [Burry] Event Report is privileged pursuant to the PRPA?

3.  Whether the [t]rial [c]ourt erred in holding that the Root Cause Analysis is not protected from discovery by virtue of the PRPA?

4.  Whether the [t]rial [c]ourt erred in holding that the Quality Improvement Peer Review performed by Dr. Dale Anderson is not protected from discovery by virtue of the PRPA?

5.  Whether the [t]rial [c]ourt erred in holding that the Serious Safety Event Rating and Patient Safety Committee Minutes are not protected by virtue of the PRPA?

6.  Whether the [t]rial [c]ourt erred in holding that the complete, unredacted credentialing files for Dr. Andrew Beyzman and CRNA Robert Burry are not protected from discovery by virtue of the PRPA?

7.  Whether the [t]rial [c]ourt erred in holding that the unredacted personnel and/or credentialing files of Katelyn Farrell, RN, JoAnn Thomas, RN, Kristen Yavorski, RN, Kayla Barber, ST, Kimberly Barron, ST, Lisa Cernera, RNFA, BSN, Calvin Dysinger, MD, Shay Robinson, MD, John Amico, CRNA, Jason McDade, RN, and Daniel Walton, RN are not protected from discovery by virtue of the PRPA?

Hospital's Brief at 4-5.

**PSQIA Claim**

**Issue 1 –  The Burry Event Report and the Root Cause Analysis**

In its first issue, Hospital claims that the trial court erred when it determined that the PSQIA did not privilege from discovery the Burry Event Report and the Root Cause Analysis.

In order to evaluate the argument of Hospital, we must analyze the language of PSQIA.  We start with general principles of statutory construction. "Where the issue is the proper interpretation of a statute, it poses a question of law; thus, our standard of review is *de novo*, and the scope of our review

is plenary." ***Yocabet v. UPMC Presbyterian***, 119 A.3d. 1012, 1019 (Pa. Super. 2015) (quotation marks and citations omitted). Generally, courts disfavor evidentiary privileges. ***Leadbitter v. Keystone Anesthesia Consultants, Ltd.***, --- A.3d ---, 2020 WL 702486 *3 (Pa. Super. 2020).

The PSQIA provides, generally, that "patient safety work product shall be privileged[.]" 42 U.S.C. § 299b-22(a). The Act defines "patient safety work product" as "any data, reports, memoranda, analyses (such as root cause analyses), or written or oral statements . . . which . . . are assembled or developed by a provider for reporting to a patient safety organization **and** are reported to a patient safety organization[.]" ***Id.*** at § 299b-21(7)(A)(i)(I) (emphasis added).

Relevantly, "patient safety work product" excludes "information that is collected, maintained, or developed separately, or exists separately, from a patient safety evaluation system." ***Id.*** at § 299b-21(7)(B)(ii). "Such separate information or a copy thereof reported to a patient safety organization shall not by reason of its reporting be considered patient safety work product." ***Id.***

The party asserting a privilege bears the burden of producing facts establishing proper invocation of the privilege. ***Custom Designs & Mfg. Co. v. Sherwin-Williams Co.***, 39 A.3d 372, 376 (Pa. Super. 2012). "[T]hen the burden shifts to the party seeking disclosure to set forth facts showing that disclosure will not violate the [] privilege." ***Id.*** (citation omitted). "Absent a sufficient showing of facts to support [a] privilege . . . the communications are

- 15 -

not protected." ***Ford-Bey v. Professional Anesthesia Services of North America, LLC***, --- A.3d ---, 2020 WL 830016 *5 (Pa. Super. 2020).

**The Burry Event Report**

Hospital argues it met its burden to establish that the Burry Event Report is protected by the PSQIA privilege because it asserted in the Affidavit that:

> 1. Hospital has maintained a relationship with a patient safety organization ("PSO") (CHS PSO, LLC) since 2012;
>
> 2. the purpose of the relationship with the PSO is to allow the confidential and protected exchange of patient safety and quality information in the conduct of patient safety activities;
>
> 3. Hospital has maintained a patient safety evaluation system ("PSES"), facilitated by the use of an event reporting system ("ERS"), as its internal process for collecting, managing, and analyzing information that may be reported to its PSO;
>
> 4. the PSES encompasses information assembled, developed, deliberated upon, or analyzed from patient safety and quality activities and includes information that may result in documents such as occurrence reports, cause analyses, and root cause analyses;
>
> 5. Hospital prepares the documents sought by Mrs. Ungurian for the express purpose of improving patient safety and care quality and are maintained within Hospital's PSES for reporting to the PSO
>
> 6. Hospital did not collect, maintain, or develop the Burry Event Report separately from its PSES, did not disclose the Burry Event Report and the Burry Event report is not required to be publicly disclosed or reported.

Hospital's Brief at 24-25.

The trial court determined that Hospital failed to meet its burden to establish that the Burry Event Report was "patient safety work product" under the PSQIA because Hospital failed to allege in the Affidavit that it developed

- 16 -

the Burry Event Report for reporting to or by a PSO. Trial Ct. Op., 8/14/19, at 17-18. The court found Hospital's assertions that it: (1) prepared the Burry Event Report "for the express purpose of improving patient safety and quality;" (2) maintained the Burry Event Report "within [Hospital's] ERS for reporting to CHS PSO, LLC;" and (3) the "ERS is used to manage information that only MAY be reported to the PSO" were insufficient to establish that Hospital developed the Burry Event Report for the purpose of reporting to the PSO. *Id.* at 18. It noted that the averments in the Affidavit only "confirm that the [Burry] Event Report **could have** been developed for a purpose other than reporting to a PSO and still be managed within the ERS." *Id.* (emphasis added).

The trial court interpreted PSQIA as "requir[ing] that, to be considered patient safety work product, a document **must** be developed for the purpose of reporting to a PSO." *Id.* (emphasis added). The trial court concluded, therefore, that because Hospital failed to assert that Hospital developed the Burry Event Report for the purpose of reporting to a PSO, the Burry Event Report was not patient safety work product entitled to the protection of the PSQIA privilege. *Id.*

We agree with the trial court's analysis that the PSQIA requires that, in order to be considered patient safety work product, Hospital had the burden of initially producing sufficient facts to show that it properly invoked the privilege. Stated another way, Hospital had to allege that it prepared the Burry Event Report for reporting to a PSO **and** actually reported them to a

PSO. Because Hospital did not so allege,[11] it did not meet its burden to establish that the Burry Event Report was entitled to protection under the PSQIA's patient safety work product privilege.

**The Root Cause Analysis**

With respect to the Root Cause Analysis, the court found Hospital's failure to proffer in the Affidavit that the Root Cause Analysis was "developed for the purpose of reporting to the PSO" was fatal to its PSQIA privilege claim. *Id.* at 19. The court also found that Hospital admitted that the information contained in the Root Cause Analysis "is not contained solely in the PSES." *Id.* at 19-20 (citing Hospital's counsel's admission that an email between Joan Keis and Dr. Thomas James specifically references the Root Cause Analysis). The court found that Hospital's admission that the Root Cause Analysis existed outside of the PSES defeated its claim that the Root Cause Analysis is privileged patient safety work product.

We agree with the trial court's analysis that the PSQIA imposed a burden on Hospital to proffer evidence that it developed the Root Cause Analysis for the purpose of reporting to a PSO. Hospital did not proffer such evidence. Moreover, Hospital admitted that the Root Cause Analysis exists outside of

---

[11] Hospital asserts in its appellate Brief that it submitted the Burry Event Report to the PSO. Hospital's Brief at 27. As noted above, however, Hospital did not assert that it had submitted the Burry Event Report to the PSO in the Affidavit in support of its privilege claim and Hospital has not supported this assertion with citation to the record.

Hospital's patient safety evaluation system, also defeating its privilege claim. Therefore, Hospital failed to satisfy its burden of proving that the Root Cause Analysis was entitled to protection under the PSQIA's patient safety work product privilege.

**PRPA**

### Issue 2 – the Burry Event Report

In its second issue, Hospital claims that the trial court erred in compelling it to produce the March 5, 2018 Burry Event Report. Hospital's Brief at 42-45. Hospital argues that the PRPA peer review privilege protects it from producing the Burry Event Report because: (1) Hospital is a "professional health care provider" under PRPA; and (2) the Burry Event Report was not in the nature of an "incident report." ***Id.***

The PRPA provides an evidentiary privilege for "peer review" documents. Section 425.4 provides, in relevant part, as follows:

> The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional healthcare provider arising out of the matters which are the subject of evaluation and review[.]

63 P.S. § 425.3.

The PRPA defines "[p]eer review" as "the procedure for evaluation by professional health care providers of the quality and efficiency of services ordered or performed by other professional health care providers . . . ." 63 P.S. § 425.2.

Under the PRPA, a "[p]rofessional healthcare provider" includes "individuals who are approved, licensed[,] or otherwise regulated to practice or operate in the healthcare field under the laws of the Commonwealth." 63 P.S. § 425.2(1).

The PRPA defines a peer "[r]eview organization" as "any committee engaging in peer review . . . to gather and review information relating to the care and treatment of patients for the purposes of (i) evaluating and improving the quality of health care rendered; (ii) reducing morbidity and mortality; or (iii) establishing and enforcing guidelines designed to keep within reasonable bounds the cost of healthcare." 63 P.S. § 425.2.

In contrast, hospital incident and event reports are business records of a hospital and not the records of a peer review committee. *Atkins v. Pottstown Memorial Medical Center*, 634 A.2d 258, 260 (Pa. Super. 1993). Incident reports are, therefore, not entitled to the confidentiality safeguards of the PRPA. *Id.* Additionally, the PRPA does not protect documents available from other sources or documents that have been shared outside of the peer review committee. 63 P.S. § 425.4.

Hospital argues that the Burry Event Report is privileged pursuant to the PRPA because it "was prepared for the express purpose of improving patient

safety and quality of care . . . pursuant to Hospital's 'Policy/Procedure 8-2'"[12] and "was initiated by a professional healthcare provider under the Act, namely the Hospital." Hospital's Brief at 42-43. It disputes that the Burry Event Report is in the nature of an incident report. *Id.* at 43.

The trial court found that the PRPA peer review privilege did not apply to the Burry Event Report because Hospital failed to support its privilege claim with sufficient proof of the privilege's applicability, namely the identity of the members of the review committee. Trial Ct. Op. at 28. It also found that the PRPA privilege did not apply to the Burry Event Report because the Report was not generated in the context of a peer review and "is similar to the type of incident report that is not protected by the PRPA." *Id.* at 31. ***See also id.*** at 32-33 (where the court explained that "if the Burry Event Report was generated pursuant to [Hospital's] Event Reporting Policy as asserted in the Privilege Affidavit, it is an incident report that is not afforded the protections of the PRPA.").

_____

[12] Hospital appended a copy of its "Event Reporting Policy" to the Affidavit. The Policy's stated purpose is to: (1) "establish a standardized mechanism by which to report events internally and to the CHS PSO, LLC involving patients and/or visitors events of harm;" (2) "track and trend processes at risk that impact patient safety by using a Patient Safety Evaluation System, [ERS];" (3) "track and trend all severity levels of harm;" (4) "analyze trends to prevent harm, improve patient safety, healthcare quality[,] and healthcare outcomes;" and (5) "function as an organization[-]wide policy for [the] Event Report[.]" Policy, 6/2005, at § A-E. Nowhere in the Policy does Hospital refer to peer review or a peer review organization or committee.

Following our review of the record, we agree with the trial court that Hospital did not generate the Burry Event Report during the course of peer review. Instead, the Report, produced in accordance with Hospital's Event Reporting Policy, is in the nature of an incident report. It is, therefore, not entitled to the confidentiality safeguards of the PRPA. Moreover, even if the Burry Event Report was not merely an incident report, because the PRPA requires that peer review activities be conducted by professional healthcare providers, Hospital's failure to identify the members of its peer review committee is fatal to its claim that the PRPA privilege applies.

**Issue 3 – The Root Cause Analysis**

In its third issue, Hospital claims that the trial court erred in determining that the Root Cause Analysis is not privileged simply because Hospital did not provide a list of all individuals involved in the production of the Root Cause Analysis. Hospital's Brief at 46. Hospital argues that the privilege applies because "the peer review was initiated by a professional healthcare provider[.]" *Id.* Hospital also argues that the trial court erred when it held that the PRPA privilege does not apply to the Root Cause Analysis because the Root Cause Analysis was the subject of correspondence between Hospital and Highmark. *Id.*

Hospital asserted in its Affidavit that its Root Cause Analysis Committee produced the April 12, 2018 Root Cause Analysis Report. Affidavit at ¶ 26. It did not, however, identify the members of the Root Cause Analysis

Committee. Because the PRPA privilege only applies to the observations of and materials produced during an evaluation by "professional health care providers," Hospital's failure to identify the members of the Root Cause Analysis Committee as "professional healthcare providers" is, as the court concluded, fatal to their privilege claim. Hospital is, therefore, not entitled to relief.[13]

**Issue 4 – The Quality Improvement Medical Staff Peer Review**

In its fourth issue, Hospital claims that the trial court erred in compelling NAPA to produce the Quality Improvement Medical Staff Peer Review performed on April 15, 2018, by Dr. Dale Anderson. Hospital's Brief at 47. Hospital asserts that the PRPA privilege applies because Dr. Anderson performed the review as the initiating part of the Hospital's peer review process expressly at Hospital's behest. *Id.* at 49.

As mentioned above, under the PRPA, a "[p]rofessional healthcare provider" includes "individuals who are approved, licensed[,] or otherwise regulated to practice or operate in the healthcare field under the laws of the Commonwealth." 63 P.S. § 425.2(1).

Relying on the representations in Hospital's Affidavit and the testimony adduced at the January 23, 2019 hearing, the trial court determined that the PRPA privilege did not apply to the Quality Improvement Medical Staff Peer

---

[13] In light of our disposition, we do not address Hospital's alternate arguments.

Review. The court based its conclusion on the fact that Dr. Anderson's Pennsylvania medical license expired in 2014 and, thus, he did not qualify as a "professional healthcare provider" under the PRPA at the time he performed the "peer review." Trial Ct. Op. at 25. The court also considered that Dr. Anderson was the managing partner of NAPA LLP, a non-healthcare provider, and, therefore, he could not have conducted peer review on NAPA's behalf.[14] *Id.* at 26.

In rejecting Hospital's argument that Dr. Anderson conducted peer review because he performed the Quality Improvement Medical Staff Peer Review at Hospital's behest, the court noted that neither Hospital nor the NAPA Defendants had presented the court with the contract between those parties to prove that Dr. Anderson performed the Quality Improvement Medical Staff Peer Review for Hospital. *Id.* at 27. Instead, the court noted that the only information of record regarding the relationship between Hospital and Dr. Anderson came from the argument of counsel. *Id.* Therefore, the court concluded that "the record lacks sufficient evidence that [Hospital] contracted with NAPA[] and/or Dr. Anderson for the provision of peer review services." *Id.*

We agree with the trial court that, in order for the PRPA privilege to apply to the Quality Improvement Medical Staff Peer Review, Hospital had to

---

[14] Neither Hospital nor the Napa Defendants dispute that the NAPA Defendants are not "professional healthcare providers" as defined by the PRPA.

prove that a "professional healthcare provider" conducted it. Neither Dr. Anderson nor the NAPA Defendants are "professional healthcare providers" under the PRPA, and, as noted by the trial court, Hospital did not proffer anything more than bald allegations to support its claim that Dr. Anderson performed the Quality Improvement Medical Staff Peer Review at its request. Accordingly, the trial court did not err in compelling Hospital to produce the Quality Improvement Medical Staff Peer Review.

### Issue 5 – the Serious Safety Event Rating and Patient Safety Committee Meeting Minutes

In its fifth issue, Hospital claims that the trial court erred in concluding that the PRPA privilege does not apply to the April 12, 2018 Summary of its Serious Safety Event Rating Meeting because Hospital did not identify the members of the Serious Safety Event Rating committee. Hospital's Brief at 53. Hospital argues that the identity of the committee members is irrelevant because the members participate on behalf of and at the request of Hospital, which is a "professional healthcare provider" under the PRPA. *Id.*

In its Affidavit in support of this particular claim of privilege, Hospital asserted only that: (1) "The Serious Safety Event Meeting Summary, dated April 12, 2018, was prepared to summarize the meeting of the Serious Safety Event Committee at [Hospital;]" (2) "This Committee meets for the purpose of reviewing and assessing the quality of patient care at [Hospital;]" and (3) "The Serious Safety Event Committee Summary is specifically designated as privileged peer review information." Affidavit at ¶¶ 23-25.

These bald claims, without more, do not satisfy Hospital's evidentiary burden of proving applicability of the PRPA privilege. Hospital's unilateral assertion that the Meeting Summary is "privileged peer review information" does not, without more, entitle this document to protection under the PRPA. Accordingly, the trial court did not err in ordering Hospital to produce to Mrs. Ungurian the Serious Safety Event Committee Meeting Summary.

**The Patient Safety Committee Meeting Minutes**

Hospital also argues that the court erred in ordering it to produce the minutes from the May 15, 2018 Patient Safety Committee Meeting. Hospital's Brief at 58-64. Following our review of Hospital's Affidavit in support of this claim, we conclude that the trial court did not err. Notably, Hospital averred in its Affidavit that "[t]he Patient Safety Committee is a multidisciplinary group whose membership is representative of both the hospital and the community it serves." Affidavit at ¶ 36. Because the Patient Safety Committee includes members of the community served by Hospital, the Committee is not exclusively comprised of "professional healthcare providers." Accordingly, Hospital failed to satisfy its evidentiary burden of proving the applicability of the PRPA privilege to the Patient Safety Committee Meeting Minutes.

**Issue 6 and 7– The Credentialing Files**

Because Hospital's sixth and seventh issues are related, we address them together. In its sixth issue, Hospital claims that the trial court erred in compelling it to produce the complete unredacted credentialing files for Dr.

Andrew Beyzman and CRNA Robert Burry.[15]  Hospital's Brief at 58-64.  In particular, Hospital claims that the doctors' performance reviews are privileged under the PRPA.  ***Id.*** at 63.  Hospital asserts that its own credentialing committee, staffed by physicians, evaluates the performance of other physicians.  ***Id.*** at 62.  It concludes, therefore, that its "[c]redentialing [c]ommittee falls within the PRPA's definition of qualifying 'review committee' as opposed to a non-qualifying 'review organization.'"  ***Id.***

Similarly, in its seventh issue, Hospital claims that the trial court erred in compelling it to produce the "competency and performance evaluations" of certain of its staff members who participated in Jason Ungurian's care.  ***Id.*** at 66.  Hospital argues that Hospital itself conducted the performance evaluations of CRNA John Amico, registered nurses Katelyn Farrell, JoAnn Thomas, Kristin Yavorksy, Lisa Cernera, Daniel Walton, and Jason McDade, and surgical technicians Kayla Barber and Kimberly Barron to evaluate "the quality and efficiency of . . . services performed."  ***Id.***  (citing 63 P.S. 425.2).  It argues that the performance reviews within the credentialing files of doctors Calvin Dysinger and Shay Robinson are privileged under the PRPA because

---

[15] Hospital produced a redacted version of the files.  It noted in its Privilege Log that it had redacted from the credentialing files, "*inter alia*, malpractice insurance carrier questionnaires and credentialing reports, National Practitioner Data Bank Query Responses, Hospital Credentialing Risk Assessment Checklists, Claims Experience Reports, Ongoing Professional Practice Evaluations, letters from the malpractice insurance carrier, and department assessments and reports."  ***Id.*** at 59 (referring to Hospital's Privilege Log).

Hospital's "own credentialing committee initiates and executes its credentialing review, which implicitly is done for the purpose of ensuring quality of care in [] Hospital." ***Id.*** at 66-67. Thus, it concludes, "Hospital is itself 'a committee engaging in peer review.'" ***Id.*** at 67.

Credentialing review is not entitled to protection from disclosure under the PRPA. ***Reginelli v. Boggs***, 181 A.3d 293, 306 n.13 (Pa. 2018). ***See also Estate of Krappa v. Lyons***, 211 A.3d 869, 875 (Pa Super. 2019), *appeal denied*, 222 A.3d 372 (Pa. 2019) (Table) (citation omitted) ("The PRPA's protections do not extend to the credentialing committee's materials, because this entity does not qualify as a 'review committee.'").

Hospital predicates its argument in support of the privilege attaching to the aforementioned credentialing files on its assertion that its credentialing committee is a PRPA-qualifying review committee. However, noted ***supra***, credentialing committees are not review committees under the PRPA, whose materials are entitled to its statutory privilege. ***Krappa***, 211 A.3d at 875. Accordingly, the documents Hospital seeks to withhold are not protected by the PRPA privilege and the trial court did not err in directing Hospital to produce them to Mrs. Ungurian. Hospital is, therefore, not entitled to relief.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>04/28/2020</u>