2023 PA Super 163

| | | |
|---|---|---|
| WAKEEM FORD-BEY, ADMINISTRATOR OF THE ESTATE OF WANETTA FORD-BEY | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| PROFESSIONAL ANETHESIA SERVICES, JOEL D. SOKOLOFF, M.D., THOMAS MADDALONI, CRNA, SCOTT WILSON, CRNA, AND PHYSICIAN'S CARE SURGICAL HOSPITAL, LP | : : : : : : : : | No. 162 EDA 2022 |
| APPEAL OF: PHYSICIAN'S CARE SURGICAL HOSPITAL, LP | : : : | |

Appeal from the Order Entered December 7, 2021
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2017-02996

BEFORE: KING, J., SULLIVAN, J., and STEVENS, P.J.E.*

OPINION BY SULLIVAN, J.: **FILED SEPTEMBER 12, 2023**

Physician's Care Surgical Hospital ("Hospital") appeals from the discovery order requiring Hospital to produce documents to Wakeem Ford-Bey ("Appellee"), administrator of the estate of Wanetta Ford-Bey ("Ms. Ford-Bey"). Hospital has also filed a petition for permission to appeal from the amended discovery order denying its request for a certification of immediate appealability. *See* Pa.R.A.P. 1311(a)(1). We affirm and deny Hospital's petition for allowance of appeal as moot.

---

* Former Justice specially assigned to the Superior Court.

Ms. Ford-Bey underwent wrist surgery at Hospital. **See** Complaint, 2/13/17, at ¶ 25. Shortly after the surgery, Ms. Ford-Bey suffered cardiac and respiratory failures that required her transfer to another facility for further care. **See id**. at ¶¶ 27-28. A nurse internally reported the incident pursuant to Hospital's "Sentinel Event Policy" (or "Policy").[1] **See** Hospital's Responses to Appellee's Supplemental Request for Production of Documents (Set X), 4/3/19, at ¶ 1. Lisa Gill ("Gill"), who holds several titles at Hospital, conducted a "root cause analysis" to determine the cause of Ms. Ford-Bey's decline. **See** Hospital's Response and Opposition to Appellee's Motion to Strike Objections and Compel Hospital's Responses, 8/2/19, at ¶ 24; Hospital's Sur-Reply to Appellee's Motion to Strike Objections and Compel Hospital's Responses, 10/23/19, at 5.

On June 17, 2015, Gill interviewed Hospital staff members involved in Ms. Ford-Bey's surgery and care. **See** Hospital's Response and Opposition to Appellee's Motion to Strike Objections and Compel Hospital's Responses, 8/2/19, at ¶ 24. Gill took notes on a three-page form containing standard questions. The parties agree that Gill authored at least one report that she sent to the Pennsylvania Patient Safety Authority ("PPSA"), an independent agency established under the Medical Care and Reduction of Error Act

---

[1] Hospital was formed and funded by Nueterra Holding's LLC ("Nueterra"), a Kansas company. Nueterra, through its related entities, provides Hospital with its management, staff, and internal policies, including the Policy.

("MCARE"), 40 P.S. §§ 1303.101-1303.910.[2]  **See** N.T., 9/17/21, at 26-27.

Ms. Ford-Bey remained in a vegetative state after the surgery and died in July 2015.

Appellee commenced the underlying medical malpractice action against Hospital and several other defendants.  During discovery, Appellee requested from Hospital all data and documents from the root cause analysis.  **See** Hospital's Response to Appellee's Supplemental Request for Production of Documents (Set IV), 8/1/17, at ¶ 15.  Hospital objected based on privilege, and Appellee moved to strike the objections.  **See id**.

Hospital responded to Appellee's motion to strike and asserted that materials from the root cause analysis arose out of Hospital's performance of its MCARE obligations and that section 311(a) of MCARE protected such materials from disclosure in a civil proceeding.  **See** Hospital's Response and Opposition to Appellee's Motion to Strike Objections and Compel Hospital's Responses, 8/2/19, at ¶ 24; **see also** 40 P.S. § 1303.311(a).  In support of its claim of confidentiality, Hospital provided the trial court with a copy of its Sentinel Event Policy.

The Policy, upon which Hospital relied, establishes the procedures for reporting a "sentinel event"[3] and provides that Hospital will conduct a "root

---

[2] **See** 40 P.S. §§ 1303.303 (establishing the PPSA); 1303.304 (stating the duties of the PPSA); 1303.313 (imposing a duty on medical facilities to report to the PPSA and the Pennsylvania Department of Health).

[3] A "sentinel event" under the Sentinel Event Policy means an "[u]nexpected adverse occurrence involving death . . . or the risk thereof."  Policy at 1.

cause analysis . . . to determine the basic, causative factor(s) that led to the event." Policy at 1. An "administrative team" and the Hospital's director of performance improvement also review the notification of a sentinel event. *Id*. at 1. They determine whether an "intensive assessment resulting in a root cause analysis" is required, and, if necessary, form a team to conduct a root cause analysis. *Id*. at 1-2. The root cause analysis may result in an action or improvement plan, which the team will report to an "organizational administrative team," a "performance improvement committee," and the Hospital's "governing body," and, at the direction of the "administrative team," to other Hospital committees. *Id*. at 2 (some capitalization omitted). The root cause analysis may also result in corrective actions managed through "the medical staff committee" process, a "department manager," or through "the organizational performance improvement model," depending upon the cause of or factors related to the event. *Id*. The Policy states that Hospital's "Administrator/CEO" has the sole discretion to communicate the event or corrective action to "other organizations or individuals." *Id*.

Additionally, Hospital referred to Appellee's deposition of Christopher Doyle ("Doyle"), the Chief Executive Officer and corporate designee of Hospital. *See* Hospital's Sur-Reply in Further Support of Response and Opposition, 10/23/19, at 7-9. Of relevance to this appeal, Doyle testified about Hospital's boards and committees, its policies, and the specific root cause analysis that Gill conducted after Ms. Ford-Bey's respiratory failure following her surgery. Specifically, Doyle noted that Hospital did not have a

committee specifically designated a "patient safety committee," as is required by MCARE, but later testified that Hospital's Committee on Quality Initiatives ("CQI") is the "primary safety committee" that will "review safety" during its meetings and receives reports of all incidents at Hospital. **See** Doyle Deposition, 10/1/19, at 40-41.[4] Doyle described how the nurse's internal incident report regarding Ms. Ford-Bey's cardiac and respiratory failures went to Hospital's risk manager and the director of nursing, then to Gill. **See id**. at 44-45. Doyle testified that the incident report triggered the Policy, which, in turn, caused Gill to conduct the root cause analysis. **See id**. at 80, 105, 115. Doyle described Gill's corporate titles as "possibly" Hospital's patient safety officer, and as Hospital's director of quality and accreditation, the "performance improvement department," and a senior clinical nurse. **See id**. at 44-45, 81. He could not recall if Gill submitted a report concerning Ms. Ford-Bey to the CQI, but recalled discussions of the event. **See id**. at 119.

Following oral arguments, the trial court struck Hospital's objections and on December 7, 2021, ordered Hospital to produce "any notes of Lisa Gill pertaining to the root cause analysis she conducted on June 17, 2015." Order,

---

[4] Doyle also later referred to a "patient safety committee" as a subcommittee of the CQI. **See id**. at 41-43. Doyle was not able to recall the CQI's or the patient safety committee's members. Hospital, in later discovery responses, identified the membership of the CQI and a patient safety subcommittee.

12/7/21.[5]  Hospital timely appealed, and both Hospital and the trial court complied with Pa.R.A.P. 1925.

Hospital raises the following issues for our review:

1. Whether this appeal, which arises from the trial court's [o]rder compelling disclosure of material that is privileged under [s]ection 1303.311(a) of [MCARE] falls within th[is] Court's appellate jurisdiction to review collateral orders.

2. Whether information gathered in accordance with an internal hospital policy "arise[s] out of" the hospital's duties under MCARE, such that the information is privileged pursuant to [s]ection 1303.311(a) . . ..

Hospital's Amended Brief at 4.

In its first issue, Hospital invokes the collateral order doctrine.  **See id**. at 17-24.  This issue implicates this Court's jurisdiction and involves a question of law, over which our standard of review is *de novo*, and our scope of review is plenary.  **See Calabretta v. Guidi Homes, Inc.**, 241 A.3d 436, 441 (Pa. Super. 2020).

Pennsylvania Rule of Appellate Procedure 313 permits an immediate appeal as of right from an otherwise interlocutory order where the appellant

---

[5] Hospital timely filed a motion for reconsideration and a petition to certify the December 7, 2021 order for an immediate appeal pursuant to 42 Pa.C.S.A. § 702(b).  On December 27, 2021, the trial court granted Hospital reconsideration, in part, and amended its order to permit Hospital to withhold the report that Gill submitted to the PPSA.  **See** Amended Order, 12/27/21, at 1 (stating that "the subsequent report authored and submitted by . . . Gill to the [PPSA] does not have to be produced as per agreement of the parties and counsel").  The amended order also denied Hospital's request for certification for immediate appeal.  Hospital, as noted above, has filed in this Court a Rule 1311 petition for permission to appeal in conjunction with its timely notice of appeal.

demonstrates that the order appealed from meets the following elements: (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost. **See** Pa.R.A.P. 313(b); **see also Witt v. LaLonde**, 762 A.2d 1109, 1110 (Pa. Super. 2000). To establish a collateral order, each of the three requirements must be clearly present. **See J.S. v. Whetzel**, 860 A.2d 1112, 1117 (Pa. Super. 2004).

Before addressing Hospital's arguments, it is helpful to outline the framework of MCARE's reporting requirements. Chapter 3 of MCARE, entitled "Patient Safety" ("Chapter 3"), "relates to the reduction of medical errors for the purpose of ensuring patient safety." 40 P.S. § 1303.301. Chapter 3 calls for the creation of public and private offices for reporting events that result in a patient's death, which MCARE defines as a "serious event."[6] Chapter 3 establishes the PPSA as an independent agency, and section 304 authorizes the PPSA to contract with third-party entities to collect and analyze reports of serious events, relay recommendations to medical facilities, and advise medical facilities of immediate changes to reduce serious events. **See id**. § 1303.304(a)(5).[7]

---

[6] 40 P.S. § 1303.302 (defining a "[s]erious event" as "an event, occurrence or situation involving the clinical care of a patient in a medical facility that results in death . . .").

[7] The PPSA may also receive anonymous reports from health care workers concerning serious events. **See id**. § 1303.304(b).

Chapter 3 mandates that a medical facility, such as Hospital, develop and implement a "patient safety plan" that designates a facility's "patient safety officer," establishes a "patient safety committee," and identifies internal systems for employees to report serious events. *Id*. § 1303.307(b)(1)-(3). A medical facility must submit its patient safety plan to the Pennsylvania Department of Health for approval. *See id*. § 1303.307(c). Health care workers must report serious events pursuant to this plan. *See id*. § 1303.308(a). The medical facility, in turn, must report serious events to the Pennsylvania Department of Health and the PPSA. *See id*. § 1303.313.

Chapter 3 also sets requirements for the membership on a medical facility's patient safety committee. *See id*. § 1303.310(a)(2) (requiring, for example, that a patient safety committee include at least one resident of the community that a facility serves). Chapter 3 requires that the patient safety officer be a member of the patient safety committee, and section 309(4) requires the patient safety officer to report to the patient safety committee any action she takes to promote patient safety based on investigations that she commences pursuant her statutory duties. *See id*. § 1303.309(4).

Section 310(b) further mandates that a patient safety committee:

(1) Receive reports from the patient safety officer pursuant to section 309.

(2) Evaluate investigations and actions of the patient safety officer on all reports.

(3) Review and evaluate the quality of patient safety measures utilized by the medical facility. A review shall include the

consideration of reports made under sections 304(a)(5) and (b), 307(b)(3) and 308(a).

(4) Make recommendations to eliminate future serious events and incidents.

(5) Report to the administrative officer and governing body of the medical facility on a quarterly basis regarding the number of serious events and incidents and its recommendations to eliminate future serious events and incidents.

*Id*. § 1303.310(b) (footnotes omitted).

Section 311 of MCARE sets forth the following confidentiality provision:

**(a) Prepared materials.--*Any documents, materials or information solely prepared or created for the purpose of compliance with*** section 310(b) or of reporting under section 304(a)(5) or (b), 306(a)(2) or (3), 307(b)(3), 308(a), 309(4), 310(b)(5) or 313 ***which arise out of matters reviewed by the patient safety committee pursuant to section 310(b) or the governing board of a medical facility pursuant to section 310(b) are confidential and shall not be discoverable or admissible as evidence in any civil or administrative action or proceeding***. . . .

\* \* \* \*

**(c) Applicability.--**The confidentiality protections set forth in subsection[] (a) . . . ***shall only apply to the documents, materials or information prepared or created pursuant to the responsibilities of the patient safety committee or governing board of a medical facility set forth in section 310(b)***.

*See id*. § 1303.311(a)-(c) (footnote omitted) (emphases added). The confidentiality provision of section 311(a) thus strikes a balance between the MCARE requirements to report and respond to serious events with assurances that documents, material, and information prepared or created to comply with MCARE will not be used against a facility in civil litigation.

Following our review, we conclude that the question of confidentiality under section 311(a) of MCARE is separable from and collateral to Appellee's cause of action. Further, MCARE's confidentiality provisions involve important rights concerning the collection and processing of information related to patient safety, as well as the sharing of such information with governmental agencies pursuant to Pennsylvania law. *See* 40 P.S. §§ 1303.310(b), 1303.311(a). Lastly, postponement of review until a final determination would result in an irreparable loss of the rights established under MCARE. Therefore, we conclude that we have jurisdiction pursuant to Pa.R.A.P. 313 and will address the merits of Hospital's claims that Appellee sought documents or information protected by section 311(a) of MCARE. *See Ungurian v. Beyzman*, 232 A.3d 786, 793 & n.10 (Pa. Super. 2020).[8]

Hospital, in its second issue, claims that the trial court erred in its interpretation and application of Chapter 3 of MCARE. Our standard of review is as follows:

> In reviewing the propriety of a discovery order, our standard of review is whether the trial court committed an abuse of discretion. Abuse of discretion occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill-will.

*Carlino E. Brandywine, L.P. v. Brandywine Village Associates*, 260 A.3d 179, 195-96 (Pa. Super. 2021) (internal citations, quotations, and brackets

---

[8] Because the collateral order doctrine applies, we deny Hospital's petition for permission to appeal pursuant to Rule 1311 as moot.

omitted) ("*Carlino*").  When the claim of privilege requires consideration of a question of law, such as the interpretation of a statute, our standard of review is *de novo*, and the scope of our review is plenary.  *See Ungurian*, 232 A.3d at 794.

Pennsylvania law imposes a shifting burden of proof in disputes when deciding whether to compel disclosure of materials over a claim of any privilege.  The party asserting a privilege must initially produce facts to properly invoke the privilege; once properly invoked, the party seeking disclosure bears the burden of showing that disclosure should be compelled either because the privilege has been waived or because an exception to the privilege applies.  *See Carlino*, 260 A.3d at 197.  If the party asserting the privilege produces insufficient facts to invoke the privilege, then the burden will not shift to the party seeking disclosure.  *See id*.

Hospital claims that the trial court erred in compelling disclosure because the evidence from its Policy and Doyle's deposition established that MCARE protected Gill's notes from her root cause analysis of Ms. Ford-Bey's cardiac and respiratory failures.  *See* Hospital's Amended Brief at 16-17, 34-36.  Hospital argues that section 311(a)'s confidentiality provision only requires that documents, materials, or information created or prepared by Gill "arise out of a" patient safety committee's or governing board's duties to review matters under section 310(b).  *Id*. at 15-16 (quoting 40 P.S. § 1303.311(a)).  Hospital engages in a statutory interpretation analysis and maintains that section 311(a)'s confidentiality provision does not require that

- 11 -

a board of directors or a patient safety committee actually examine or review a root cause analysis. *See id*. at 31, 33. Hospital further claims that the Policy and Hospital's implementation of its board and committees ensured that Hospital complied with its MCARE requirements and are therefore "rationally related" to MCARE. *See id*. at 32, 40-41. Hospital concludes that Gill's notes "***are*** the manifestation of information that is solely prepared or created for the purpose of compliance" with MCARE. *Id*. at 42 (internal citations and quotations omitted) (emphasis in original).

The trial court rejected Hospital's claim of privilege under MCARE. The trial court observed that there are no published appellate cases analyzing MCARE, section 311(a), but relied on a court of common pleas decision in ***Venosh v. Henzes***, 31 Pa. D. & C. 5th 411, 2013 WL 9593953 (Lackawanna Cty. 2013), *aff'd*, 105 A.3d 788 (Pa. Super. 2014) (unpublished memorandum).[9] Applying ***Venosh***, the trial court determined that section

_____

[9] In ***Venosh***, the court of common pleas discerned three elements to a claim of privilege under section 311(a): (1) the document was "solely prepared or created for the purpose of compliance with" MCARE; (2) the document "arise[s] out of matters reviewed by the patient safety committee . . . or the governing board" pursuant to section 310(b); and (3) the document is not otherwise available "from original sources." ***Venosh***, 2013 WL 9593953, at *10. The court further reasoned that section 311(a) did not apply "if the investigation of an incident by the defendant hospital was not commenced at the request of or by the defendant's Patient Safety Committee" or if a patient safety committee, or the hospital's governing board, did not review a document. *Id*. (internal citations and quotations omitted). It is well settled that the decision of a court of common pleas does not bind this Court, but we may consider the reasoning as persuasive. ***See Darrow v. PPL Elec. Utilities Corp.***, 266 A.3d 1105, 1112 n.6 (Pa. Super. 2021).

311(a) did not protect Gill's notes because the Policy was "clearly not an implementation of the investigation or reporting requirements" of MCARE. **See** Trial Court Opinion, 3/23/22, at 16. The trial court reasoned that the Policy did not expressly refer to MCARE, did not require the Hospital's patient safety committee to receive reports from an investigation, and only called for the Hospital's governing board's involvement in limited circumstances. **See id**.

The trial court further emphasized that Hospital did not establish its patient safety committee or governing board "in fact" reviewed Gill's notes from the root cause analysis. **See id**. at 16-17. The trial court, again citing **Venosh**, concluded that absent proof that a patient safety committee or a governing board reviewed Gill's notes, the confidentiality provision of section 311(a) did not apply. **See id**. at 17.

Following our review, we concur in the trial court's conclusion that section 311(a) did not protect Gill's notes. We begin with a review of MCARE's requirements and privileges mindful that, "[a]s with all questions of statutory interpretation, our object is to ascertain and effectuate the intention of the General Assembly, giving effect, if possible, to all provisions of the statutory provisions under review" and that "[t]he best indication of legislative intent is the statute's plain language." **Reginelli v. Boggs**, 181 A.3d 293, 300 (Pa. 2018) (citing 1 Pa.C.S.A. §§ 1921(a)-(b)).

As noted above, MCARE requires Hospital to have in place a patient safety plan that designates a facility's "patient safety officer," establishes a

- 13 -

"patient safety committee," and identifies internal systems for employees to report serious events. *Id*. § 1303.307(b)(1)-(3). MCARE further requires that Hospital's patient safety committee: (1) receives reports from the patient safety officer; (2) evaluates investigations and actions of the patient safety officer on all reports; (3) reviews and evaluates the quality of the facility's patient safety measures; (4) makes recommendations to eliminate future serious events; and (5) reports the number of serious events and its recommendations to an administrative officer or governing body of the facility on a quarterly basis. *See id*. § 1303.310(b). In exchange for these policies and procedures, MCARE protects "[a]ny documents, materials or information solely prepared or created for the purpose of compliance with section 310(b) . . . which arise out of matters reviewed by the patient safety committee pursuant to section 310(b) or the governing board of a medical facility pursuant to section 310(b) . . .." *Id*. § 1303.311(a).

While Hospital focuses on the phrase "which arise out of matters reviewed," the critical term, here, is "solely." That is, section 311(a) confidentiality attaches to "documents, materials or information *solely* prepared or created for the purpose of compliance" with the relevant MCARE requirements. *Id*. (emphasis added). "Solely" means "without another or others," or "only, exclusively, merely, or altogether." Webster New World College Dictionary (4th Ed.) at 1364 (2002). Thus, for Hospital to assert a privilege under section 311(a), it bore a burden of demonstrating that Gill's notes were exclusively prepared or created to comply with MCARE.

Here, aside from Gill's filing with the PPSA a report, which the trial court held remained confidential, Hospital failed to produce evidence demonstrating Gill solely prepared or created her notes for the purpose of complying with MCARE. To the extent Hospital relied on its Sentinel Events Policy, the Policy emanated from a Kansas corporation, and Hospital adduced no clear evidence that the Policy implemented the special requirement of an MCARE-required safety plan. *See* 40 P.S. § 1303.307(b).[10] The Policy did not identify Hospital's MCARE-required patient safety officer or patient safety committee or establish their duties with respect to "serious events." ***Compare id***. §§ 1303.307(b)(1)-(2), 1303.308(4), 1303.310(1) ***with*** Policy at 1-2 (discussing generally that "administrative team" and Hospital's director of performance improvement received notifications of events and determine if a root cause analysis is required). Doyle, Hospital's CEO and corporate designee, offered only equivocal testimony that Gill held several corporate titles, and was "possibly" Hospital's designated MCARE patient safety officer. ***See*** Doyle Deposition, 10/1/19, at 40-45, 81. Doyle's testimony that Hospital CQI acted as its MCARE patient safety committee is, at best, muddled and confusing. ***See id***. at 40-43. Hospital presented no further evidence that its

_____

[10] Hospital did not present evidence that the Department of Health approved the Sentinel Event Policy as an MCARE-required patient safety plan. ***See*** 40 P.S. § 1303.307(c).

CQI or any other subcommittee met the requirements of, or discharged the duties, of an MCARE patient safety committee. *See* 40 P.S. § 1303.310.[11]

In sum, we discern no error of law or abuse of discretion in the trial court's ruling that Hospital's Sentinel Event Policy was "clearly not an implementation of the investigation or reporting requirements" of MCARE. *See* Trial Court Opinion, 3/23/22, at 16. Absent any clear evidence of Hospital's compliance with maintaining the offices, committees, and procedures required Chapter 3 of MCARE, Hospital cannot demonstrate that Gill solely prepared or created her notes during the root cause analysis to comply with MCARE. Thus, Hospital did not meet their burden of invoking the privilege set forth in section 311 of MCARE, and the burden did not shift to Appellee to demonstrate waiver or an exception to the statute. For these reasons, we agree with the trial court that the MCARE privilege did not apply, and we affirm its order compelling disclosure of Gill's notes.

Order affirmed. Hospital's petition for allowance of appeal denied as moot.

---

[11] Even if Gill acted as an MCARE patient safety officer—as opposed to a director of quality and accreditation or some other corporate responsibility— Hospital's evidence did not establish she met her MCARE duties to report to the patient safety committee the actions she took to promote patient safety based on investigations she commenced for a serious event. *See* 40 P.S. §§ 1303.309(4), 1303.310(b)(1).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/12/2023</u>